HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BDR CLYDE HILL VII LLC, a Washington Limited Liability Company,

Plaintiff,

v.

CONTINENTAL WESTERN INSURANCE COMPANY, a foreign insurance company,

Defendant.

Case No. 2:19-cv-01647-RAJ

**ORDER ON CROSS SUMMARY JUDGMENT**

## I. INTRODUCTION

Before the Court are two motions. For the reasons below, Plaintiff's Motion for Partial Summary Judgment Regarding Defendant's Unreasonable Breach of Its Duty to Defend (Dkt. # 12) is **GRANTED**, and Defendant's Motion for Summary Judgment re Priority of Coverage and Dismissal of Extra-Contractual Claims (Dkt. # 28) is **DENIED**.

## II. BACKGROUND

In 2018, Plaintiff BDR Clyde Hill VII LLC ("BDR") sold a home that it built to Francois Vigneault and Catherine Marcotte (together, the "Homeowners"). Dkt. # 13 ¶ 3. In building that home, BDR subcontracted LR Drywall Systems, Inc. ("LR Drywall") to install spray foam insulation. *Id.* The Homeowners later sued BDR for property damage caused by LR Drywall's allegedly defective installation. Dkt. # 13-7 ¶¶ 8, 11-16.

In turn, BDR tendered the lawsuit to LR Drywall's insurer, Defendant Continental

ORDER – 1

1 Western Insurance Company ("Continental"), seeking Continental's defense and
2 indemnification. Dkt. # 13-8. When BDR subcontracted LR Drywall, they entered a
3 Master Subcontract Agreement, in which LR Drywall agreed to name BDR as an
4 "additional insured" under LR Drywall's insurance ("Continental Policy" or "Policy").
5 Dkt. # 13-2 at 10. As an additional insured, BDR believed that Continental had a duty to
6 defend and indemnify it in the Homeowner's lawsuit. Dkt. # 13-8. But Continental
7 refused. Dkt. #13-9 at 39-41.

8 According to Continental, under the Policy, the additional insured coverage that it
9 provided to BDR was excess. *Id.* BDR was insured by Amtrust International
10 Underwriters DAC, which, Continental believed, provided primary coverage to BDR. *Id.*
11 The Amtrust policy was further subject to a $100,000 "self-insured retention," or an
12 "SIR," which BDR had to pay before Amtrust's defense and indemnification obligations
13 were triggered. Dkt. # 13-1 at 75. Under the Policy's "other insurance provision,"
14 Continental believed that the Policy was excess to both the Amtrust policy and the SIR.
15 Dkt. # 13-9 at 40. Given that, Continental explained, "any defense coverage that
16 [Continental] might provide could not be triggered unless and until [BDR's] primary
17 insurer(s) decline to provide a defense to you after you exhaust the applicable SIR." *Id.*
18 And, for that reason, Continental refused to defend or indemnify BDR at the time. *Id.* at
19 40-41.

20 BDR then sued Continental in this Court for breaching the duty to defend and later
21 moved for partial summary judgment. Dkt. ## 1, 12, 16. Continental responded to the
22 motion and many months later moved for cross summary judgment. Dkt. ## 18, 28.
23 Because there are no issues of material fact, the cross motions for summary judgment are
24 ripe for adjudication.

25 ### III.  LEGAL STANDARD

26 Summary judgment is appropriate if there is no genuine dispute as to any material
27 fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.
28 ORDER – 2

56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

## IV.  DISCUSSION

### A.  Duty to Defend

"The insurer's duty to defend is separate from, and substantially broader than, its duty to indemnify." *Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 691 (Wash. 2013). "The duty to indemnify applies to claims that are actually covered, while the duty to defend arises when a complaint against the insured, construed liberally, alleged facts which could, if proven, impose liability upon the insured within the policy's coverage." *Id.* at 691 (internal quotation marks and emphasis omitted). "If there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Id.* (alterations and internal quotation marks omitted).

BDR argues that Continental has the duty to defend and that the duty has been triggered; Continental says not yet. Dkt. # 12 at 6, 8; Dkt. # 18 at 15-16. Because insurance policies are construed as contracts and interpretation is a matter of law, *State Farm Gen. Ins. Co. v. Emerson*, 687 P.2d 1139, 1141-42 (Wash. 1984), the Court will

ORDER – 3

analyze the Continental Policy here, Dkt. # 12 at 4; Dkt. # 18 at 2-8.

### i. BDR is an "additional insured" under the Continental Policy

Under endorsement CL CG 20 71 09 16, LR Drywall could name an "additional insured" under the Continental Policy. Dkt. # 13-3 at 58. The additional insured could be any "person(s) or organization(s)" that LR Drywall was "obligated [to] by virtue of a written contract or agreement," and the Policy only applied if LR Drywall was in fact "required to add the additional insured" under that agreement. *Id.* Here, when BDR subcontracted LR Drywall to install spray foam insulation, LR Drywall agreed to name BDR as an additional insured, making BDR a proper "additional insured" under the Policy. Dkt. # 13-2 at 10.

### ii. Continental's duty to defend is subject to several conditions, all of which have been triggered

Invoking Section IV of the Commercial General Liability Coverage Form ("Section IV"), BDR claims that Continental has a duty to defend BDR in the Homeowner's lawsuit. Section IV(4)(b)(2) states:

> (2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Dkt. # 13-3 at 33. Based on this section, Continental must defend BDR under several conditions. First, for the section to apply, the Policy must be excess. Second, if another insurer has a duty to defend BDR in the Homeowner's lawsuit, then Continental will not have a duty to defend. Finally, if no other insurer defends BDR, then Continental must do so. All these conditions have been met here.

The first condition is met because the Policy is excess to the Amtrust policy. Under endorsement CL CG 01 14 09 16, the Policy is excess over any "other insurance, whether primary, excess, contingent or on any other basis . . . [t]hat is available to . . . an

ORDER – 4

1 additional insured." Dkt. # 13-3 at 46.  The Policy could be primary and noncontributory over BDR's insurance, however, if LR Drywall and BDR had agreed to as much by a written contract. *Id.* But that is not the case here.  BDR does not argue that the Policy is in fact primary, nor does it offer any evidence of an agreement with LR Drywall to make the Policy so.  Thus, the Policy is excess.

The second condition is also met because Amtrust has no duty to defend BDR against the Homeowners.  The Amtrust policy makes clear that it is subject to an SIR and that the SIR must be first paid before any defense obligations may arise.  Dkt. # 13-1 at 75.  Although payment of the SIR is a "condition precedent" to Amtrust's duty to defend, it is not a *sufficient* condition. *Id.* That is, even if BDR pays the SIR, Amtrust is not required to defend.  Instead, Amtrust has "the *right but not the duty* to . . . defend any claim or 'suit' to which the 'Self-Insured Retention' applies." *Id.* (emphasis added). Continental does not argue otherwise.  Thus, given that no other insurer has a duty to defend BDR, Continental is not relieved from its duty to defend.

Finally, based on this record, the last condition is met as no other insurer is defending BDR.  Dkt. # 13-10.  Continental argues, however, that BDR is indeed being defended by an insurer—itself.  Dkt. # 18 at 16; Dkt. # 28 at 11.  BDR is self-insured, Continental says, and therefore "a defense is being provided . . . by the self-insurer, who has been defending."  Dkt. # 18 at 16; Dkt. # 28 at 11.  This argument is unpersuasive. Although BDR is in fact self-insured up to its SIR, it is not an "insurer" under any reasonable interpretation of the Policy.  This is true under a dictionary definition. Insurer, Black's Law Dictionary (11th ed. 2019) (defining an insurer as "[s]omeone who agrees, by contract, to assume the risk of *another's* loss and to compensate for that loss") (emphasis added).  It is also true under the definition provided by Washington's insurance code.  RCW § 48.01.050 (defining an insurer as "every person engaged in the business of making contracts of insurance").  And it is further supported by Washington case law. *Bordeaux, Inc. v. Am. Safety Ins. Co.*, 186 P.3d 1188, 1192 (Wash. Ct. App.

ORDER – 5

2008) ("No one has yet to suggest in such instances that [a self-]insured, being self-insured up to the amount of [a] deductible, is an 'insurer' who has merely 'reinsured' the risk above a certain limit.") (quoting *Stamp v. Dep't of Labor & Indus.*, 859 P.2d 597, 601 (Wash. 1993)).

BDR is a general contractor, not an "insurer." Dkt. # 1 ¶ 5; Dkt. # 12 at 1. Continental offers no evidence suggesting that BDR is in the business of making insurance contracts or that it insures anyone other than itself. Continental's argument—that BDR is an "insurer" defending itself under an SIR—fails, and the final condition on Continental's duty to defend has been met.

In sum, several conditions had to occur before Continental's duty to defend was triggered. All conditions have been met, and as a result Continental has a duty to defend BDR in the Homeowner's lawsuit.

### iii. Continental's refusal to defend is unsupported by the Policy or case law

Continental's argument is not whether it has a duty to defend BDR so much as when. Continental says that, as an excess insurer, it "does not yet have a duty defend BDR because an excess policy does not apply until the underlying primary insurance has been exhausted." Dkt. # 18 at 2. In short, it believes that BDR must exhaust both the SIR and the AmTrust policy before the Continental Policy is triggered. *Id.* at 15.

This position is hardly supported by the Policy's terms. As discussed, there are a few condition precedents to Continental's duty to defend—exhaustion of primary insurance is not among them. Indeed, exhaustion is barely mentioned in the Policy at all. By the Court's count, the word "exhaust" and its derivatives appear only once in the entire Policy and not in any context relevant here. Dkt. # 13-3. The Court will not now inject a new condition.

But Continental insists that the Policy supports its refusal to defend. It says that Section IV (which outlines Continental's duty to defend) is superseded by endorsement CL CG 20 71 09 16 (which allowed LR Drywall to name an additional insured). Dkt.

ORDER – 6

# 18 at 16; Dkt. # 28 at 4-6. The endorsement modifies Section IV by declaring that the "insurance is excess of all other insurance available to an additional insured whether on a primary, excess, contingent or any other basis" and by "supersed[ing] any provision to the contrary." Dkt. # 13-3 at 59. Continental makes two arguments. First, because the Policy is excess of all other insurance on any basis, it is excess to the Amtrust policy and the SIR. Dkt. # 28 at 8. Second, the endorsement supersedes the duty to defend portion of Section IV because that section is contrary to the endorsement. *Id.* at 11.

Neither argument is persuasive. Section IV and endorsement CL CG 20 71 09 16 are, in fact, compatible. As BDR argues, although the endorsement supersedes Section IV, nothing in the endorsement is "contrary" to Continental's promise to defend. Dkt. # 19 at 7. The section and endorsement are harmonious. The endorsement makes the Policy excess to any other insurance. Dkt. # 13-3 at 59. And "[w]hen th[e Policy] is excess," Continental's duty defend in Section IV is implicated. *Id.* at 33. As BDR puts it, "the main policy form *assumes* that Continental is 'excess'—and then states that the insurer will defend anyway." Dkt. # 19 at 7 (emphasis in original).

A more fundamental point: Continental dedicates much of its argument hoping to persuade the Court that the Policy is excess to all other insurance available to BDR. Dkt. # 18 at 11-18; Dkt. # 28 at 8-14. If it can prove that the Policy is excess, Continental seems to think, then the Court should hold that the Amtrust policy and the SIR must be exhausted before Continental's duty to defend arises. Dkt. # 18 at 11-18; Dkt. # 28 at 8-14. Quite the opposite. Under Section IV, Continental's duty to defend applies *because* the Policy is excess insurance. Dkt. # 13-3 at 33 ("*When this insurance is excess*, we will have no duty . . . to defend . . . if any other insurer has a duty to defend the insured . . . . If no other insurer defends, *we will undertake to do so* . . . .") (emphasis added). The Court agrees that the Policy is excess to the Amtrust policy, which is what, in part, triggers Continental's duty to defend. *See supra* Part IV.A.ii. Thus, at the center of summary judgment here is not whether the Policy is excess but whether Continental's duty to

ORDER – 7

defend BDR has been triggered.

Finding no support for Continental's position in the text of the Policy, the Court turns to Continental's cited authority. Continental cites several cases in support of its exhaustion argument.

First, it cites *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 134-35 (Wash. 2000), *as amended* (Jan. 16, 2001). In that case, the Washington Supreme Court explained that "an excess insurer's duty to defend may also arise when . . . (3) the coverage and obligations of the underlying insurers have been validly exhausted." *Id.* Because the Amtrust policy and SIR have not yet been exhausted, Continental concludes that its obligations as an excess insurer have not been triggered. Dkt. # 18 at 15; Dkt. # 28 at 9. But Continental ignores the court's holding just two sentences earlier: "An excess insurer's obligation to defend is generally defined by the excess policy." *Weyerhaeuser*, 15 P.3d at 134. In *Weyerhaeuser*, the excess policy was silent on the excess insurer's duty to defend. *Id.* at 134. The Continental Policy is not. Dkt. #13-3 at 33. Therefore, the general rule applies, and the Court looks to the excess Policy to determine Continental's obligation to defend BDR. The Court need not determine when "an excess insurer's duty to defend *may also* arise" here. *Weyerhaeuser*, 15 P.3d at 134 (emphasis added).

Continental next relies on *Cornhusker Cas. Co. v. SQI, Inc.*, No. 2:08-cv-00456-JCC, 2008 WL 5378312, at \*6 (W.D. Wash. Dec. 23, 2008), arguing that the excess policy there is much like the Policy here. In *Cornhusker*, an insurer provided excess coverage. *Id.* The excess policy in that case maintained that it was "excess over any other valid and collectible insurance, whether such other insurance is primary, excess, contingent or otherwise." *Id.* at \*2. The district court ultimately found no duty to defend because the defendants offered no proof that they exhausted their other insurance and SIR. *Id.* at \*7.

The policy in *Cornhusker* and the Policy here, though similar, differ in one key

ORDER – 8

respect: there, defense was a right; here, defense is a duty. *Id.* Although the *Cornhusker* court explained that an excess insurer's duties may depend on "whether the obligations of the underlying insurers, if any, have been exhausted," it also reaffirmed the general rule that the duties of "an excess insurer are defined by the policy." *Id.* Under the excess policy in that case, the excess insurer had "the right, but *not the duty* to defend," and if the claimant had no other insurer to defend it, the excess insurer "*may* [have] undertake[n] to do so." *Id.* (emphasis in original) (internal quotation marks omitted). The Policy here stands in stark contrast. In plain terms, the Policy holds that if no insurer defends BDR, Continental "*will* undertake to do so." Dkt. # 13-3 at 33 (emphasis added). Here, the Policy clearly imposes a duty to defend on Continental, and that duty has been triggered. Because the two polices are so different, Continental's reliance on *Cornhusker* is unpersuasive.

Finally, Continental argues that the Policy is not excess, but "super excess." Dkt. # 28 at 10. It says that endorsement CL CG 20 71 09 16 (modifying the Policy to be "excess of all other insurance available to an additional insured whether on a primary, excess, contingent, or any other basis"), Dkt. # 13-3 at 59, is in fact a "super excess clause," Dkt. # 28 at 10. According to Continental, the endorsement is much like the "super escape clause" in *New Hampshire Indem. Co. v. Budget Rent-A-Car Sys., Inc.*, 64 P.3d 1239, 1241 (Wash. 2003). There, the policy of one insurer contained a super escape clause, which, the Washington Supreme Court explained, provides that "insurance will not apply to any liability for loss that is covered by primary, excess, contributory, or any other basis by other insurance." *Id.* at 1241 n.2 (emphasis added). The court held that, under the super escape clause, coverage would become available "only after all other insurance available, including excess insurance, is exhausted." *Id.* at 1243.

Again, there is a significant difference between the "super escape clause" in *Budget* and the "super excess" Policy here: there, the super escape clause explicitly stated that no coverage would be triggered until all other insurance was exhausted; here,

ORDER – 9

exhaustion is not mentioned at all. The policy in *Budget* stated that "BUDGET'S LIABILITY PROTECTION *DOES NOT APPLY until after exhaustion* of all automobile liability insurance and/or other protection available to the driver." *Budget*, 64 P.3d at 1241. The Continental Policy here says nothing of exhaustion. Dkt. # 13-3 at 59.

In sum, the case law holds that an excess insurer's rights and obligations are defined by the insurer's excess policy. Although in some cases an excess insurers' rights may be triggered upon exhaustion of all other insurance, the Court must rely on the Policy's terms here. *See Budget*, 64 P.3d at 1240 ("We hold that the conditions of coverage depend on the terms of the insurance contracts and that no per se rule [governs] . . . ."). The Policy indeed states that it is excess to all other insurance. But it does not state that if the Policy is excess, its duty to defend will only be triggered after all other insurance is exhausted. In fact, the opposite is true—the Policy clearly states that when the Policy is excess, Continental will undertake BDR's defense (provided that the other condition precedents are met).

Under the Policy, Continental has a duty to defend BDR in the Homeowners' lawsuit, and Continental breached that duty. *Budget*, 64 P.3d at 1243 ("The insured should not be left without a prompt and proper defense and if a primary insurer fails to assume the defense, for any reason, the secondary insurer which has a duty to defend should provide the defense and, to do justice, should be entitled to recoup its costs from the primary insurer.").

### B. Bad Faith

"An insurer acts in bad faith if its breach of the duty to defend was unreasonable, frivolous, or unfounded." *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 700 (Wash. 2010) (en banc). An insurer may not base its refusal to defend on an "an equivocal interpretation of case law to give itself the benefit of the doubt rather than its insured." *Id.* at 701. Instead, an insured "may defend under a reservation of rights and may seek declaratory relief to establish that its policy excludes coverage." *Id.* "Denying

ORDER – 10

a duty to defend based on a questionable interpretation of case law constitutes bad faith as a matter of law." *Webb v. USAA Cas. Ins. Co.*, 457 P.3d 1258, 1274 (Wash. Ct. App. 2020). If a court determines that an insurer breached the duty to defend in bad faith, it must "presume harm from the insurer's actions" and "hold the insurer liable for the cost of any defense and estop the insurer from asserting that there is no coverage." *Robbins v. Mason Cty. Title Ins. Co.*, 425 P.3d 885, 894 (Wash. Ct. App. 2018), *aff'd*, 462 P.3d 430 (Wash. 2020).

Continental refused to defend BDR on an incorrect, or at the very least equivocal, interpretation of the Policy and case law. Its argument relies on generic rights and obligations of excess insurers described in the case law, while ignoring the plain terms of the Policy—a Policy that does not condition Continental's duty to defend on BDR's exhaustion of all other insurance. Indeed, the word exhaustion and its equivalents are hardly found in the policy at all. Thus, Continental's refusal is bad faith as a matter of law. The Court presumes that BDR was harmed and estops Continental from asserting that it has no duty to defend.

### C. Insurance Fair Conduct Act ("IFCA")

Under the IFCA, a claimant to an insurance policy who is "unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs." RCW 48.30.015(1). Continental moves for summary judgment on BDR's IFCA claim. Dkt. # 28 at 15. But, as discussed, Continental's refusal to defend was unreasonable and done in bad faith. Thus, BDR is entitled to summary judgment on its IFCA claim.

Although BDR did not move for summary judgment on its IFCA claim, that does not prevent the Court from granting summary judgment in its favor sua sponte. "Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a 'full

ORDER – 11

and fair opportunity to ventilate the issues involved in the matter.'" *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) (quoting *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir.1982)).  That was the case here.  Continental moved for summary judgment nearly eight months after it responded to BDR's motion for summary judgment.  In that time, Continental had a full and fair opportunity to ventilate BDR's IFCA claim and raise a genuine factual issue, but it has failed to do so.  Thus, as to this claim, the Court denies Continental's request for summary judgment and grants summary judgment in favor of BDR.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment Regarding Defendant's Unreasonable Breach of Its Duty to Defend (Dkt. # 12) and **DENIES** Defendant's Motion for Summary Judgment re Priority of Coverage and Dismissal of Extra-Contractual Claims (Dkt. # 28).

DATED this 12th day of August, 2020.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge

ORDER – 12